**UNITED STATES of America,**
**Plaintiff,**

v.

**$11,320.00 IN UNITED STATES CURRENCY, Defendant.**

Civil Action No. 4:11–CV–0268–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

April 26, 2012.

Michael John Brown, U.S. Attorneys Office, Atlanta, GA, for Plaintiff.

### ORDER

HAROLD L. MURPHY, District Judge.

This is a civil forfeiture action filed by the United States of America (the "Government"). The case is before the Court on the Government's Motion to Strike and Motion for Judgment on the Pleadings, which the Court has converted into a Motion for Summary Judgment [10].

## I. Initial Matters

The Government filed a Statement of Material Facts ("GSMF") in support of its Motion for Summary Judgment, as required by Local Rule 56.1B(1). N.D. Ga. R. 56.1B(1) ("A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact."). Claimant failed to respond to any of the individual statements contained in GSMF.

Local Rule 56.1B(2) states, in relevant part:

A respondent to a summary judgment motion shall include the following documents with the response brief:

a. A response to the movant's statement of undisputed facts.

(1) This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

(2) This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility

of the movant's fact; or (iii) points out that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B.(1).

(3) The court will deem the movant's citations supportive of its facts unless the respondent specifically informs the court to the contrary in the response.

(4) The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Fed.R.Civ.P.56(f).

N.D. Ga. R. 56.1B(2). The United States Court of Appeals for the Eleventh Circuit has observed: "Local Rule 56.1 protects judicial resources by 'mak[ing] the parties organize the evidence rather than leaving the burden upon the district judge.'" *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir.2008) (quoting *Alsina–Ortiz v. Laboy*, 400 F.3d 77, 80 (1st Cir.2005)). Local Rule 56.1 "also streamlines the resolution of summary judgment motions by 'focus[ing] the district court's attention on what is, and what is not, genuinely controverted.'" *Id.* (quoting *Mariani–Colon v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir.2007)).

■ As previously noted, Claimant failed to respond to any of the statements contained in GSMF. The Court therefore deems all of the statements contained in GSMF admitted.

The Court next must determine the practical effect of deeming all of the statements contained in GSMF admitted. The Eleventh Circuit has observed:

The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement. That is, because the non-moving party has failed to comply with Local Rule 56.1—the only permissible way for it to establish a genuine issue of material fact at that stage—the court has before it the functional analog of an unopposed motion for summary judgment.

*Reese*, 527 F.3d at 1268. However, "after deeming the movant's statement of undisputed facts to be admitted pursuant to Local Rule 56.1, the district court must then review the movant's citations to the record to 'determine if there is, indeed, no genuine issue of material fact.'" *Id.* at 1269 (quoting *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n. 6 (11th Cir.2004)).

■ Here, as previously discussed, the Court deems the statements contained in GSMF admitted. N.D. Ga. R. 56.1B(2). The Court, however, still must review the citations to the record provided by the Government in GSMF to determine whether a genuine dispute remains. *Reese*, 527 F.3d at 1269. The Court does so *infra* Part II.

## II. Background

### A. Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Con-*

sumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir.2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir.2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

### 1. The Officers

Sergeant J. Nix ("Sergeant Nix") is a Sergeant and a K–9 handler with the Butts County, Georgia, Sheriff's Office (the "Butts County Sheriff's Office"). (GSMF ¶ 1; Decl. of J. Nix ¶ 1.) Sergeant Nix has been employed in law enforcement for approximately sixteen years, including approximately nine years with the Butts County Sheriff's Office and approximately five years as a K–9 handler. (GSMF ¶¶ 2–3; Nix Decl. ¶¶ 2–3.) Sergeant Nix also serves as part of a joint operation with the Tunnel Hill, Georgia, Police Department (the "Tunnel Hill Police Department"). (GSMF ¶ 5; Nix Decl. ¶ 5.)

Sergeant S. Reneau ("Sergeant Reneau") is a sergeant and K–9 handler with the Tunnel Hill Police Department. (GSMF ¶ 44; Decl. of S. Reneau ¶ 1.) Sergeant Reneau has been employed by the Tunnel Hill Police Department for approximately six years, and has served as a K–9 handler for approximately five years. (GSMF ¶ 45; Reneau Decl. ¶ 2.)

Deputy M. Broce ("Deputy Broce") is a Deputy and K–9 handler employed with the Butts County Sheriff's Office. (Decl. of M. Broce ¶ 1; GSMF ¶ 48.) Deputy Broce has been employed by the Butts County Sheriff's Office for approximately eleven years, and has served as a K–9 handler for approximately five years. (GSMF ¶ 48; Broce Decl. ¶ 2.) Deputy Broce also serves as part of a joint operation with the Tunnel Hill Police Department. (Broce Decl. ¶ 3.)

Deputy Broce uses a drug detection dog named Kilo. (GSMF ¶ 49; Broce Decl. ¶ 4.) Kilo is certified each year by the National Narcotics Detector Dog Association for detection of marijuana, cocaine, methamphetamine, and heroin. (GSMF ¶ 49; Broce Decl. ¶ 5 & Ex. A.) At the time of the traffic stop, Kilo was certified as a drug detection canine. (GSMF ¶ 50; Broce Decl. ¶ 6.) Kilo is an aggressive alert dog, and indicates that he has detected a narcotic odor by scratching or pawing. (GSMF ¶ 51; Broce Decl. ¶ 7.)

### 2. The Traffic Stop

On May 4, 2011, Sergeant Nix was on routine patrol on Interstate 75 South with Deputy B. Knight of the Butts County Sheriffs Office. (GSMF ¶ 6; Nix Decl. ¶ 6.) At approximately 2:13 p.m., Sergeant Nix saw a maroon 2010 Chevrolet Equinox with Michigan tag BKY4481 slow to approximately fifty miles per hour in the middle lane. (GSMF ¶ 7; Nix Decl. ¶ 7.) Because of the Equinox's slow speed, traffic was forced to move around the Equinox in a "Y" pattern, causing vehicles to have to change lanes to pass the Equinox on both sides, and creating a dangerous traffic flow. (GSMF ¶ 8; Nix Decl. ¶ 8.) Sergeant Nix then observed the Equinox enter the right lane and then return to the middle lane. (GSMF ¶ 9; Nix Decl. ¶ 9.)

Sergeant Nix activated his patrol car's emergency lights and conducted a traffic stop on the Equinox for impeding traffic flow and for failure to maintain lane. (GSMF ¶ 10; Nix Decl. ¶ 10.) The patrol

car's dashboard camera recorded the stop. (GSMF ¶ 11; Nix Decl. ¶ 11 & Ex. A.) Sergeant Nix conducted the traffic stop at mile marker 341 on Interstate 75 South, in Tunnel Hill, Georgia. (GSMF ¶ 12; Nix Decl. ¶ 12.)

After the Equinox pulled over, Sergeant Nix approached the Equinox and asked the driver for identification. (GSMF ¶ 13; Nix Decl. ¶ 13.) While Sergeant Nix waited for the driver to produce his driver's license, Sergeant Nix smelled an odor of raw marijuana coming from the Equinox. (GSMF ¶ 14; Nix Decl. ¶ 14.) The driver eventually handed Sergeant Nix a driver's license in the name of "Charles Gray, Jr.," as well as the Equinox's registration. (GSMF ¶ 15; Nix Decl. ¶ 15.)

Sergeant Nix asked the driver to step out of the Equinox and to come to the back of Sergeant Nix's car while Sergeant Nix wrote a warning citation for the traffic violations. (GSMF ¶ 19; Nix Decl. ¶ 19.) While Sergeant Nix was at the back of the Equinox, he asked the driver about the marijuana odor coming from the Equinox. (GSMF ¶ 20; Nix Decl. ¶ 20.) The driver responded that he had smoked marijuana earlier. (GSMF ¶ 21; Nix Decl. ¶ 21.)

Sergeant Nix asked the driver where he was going, and the driver replied that he was going to Bankhead Highway to visit some family. (GSMF ¶¶ 22–23; Nix Decl. ¶¶ 22–23.) While Sergeant Nix wrote out the warning citations, Deputy Knight asked the driver how he planned to get to Bankhead Highway. (GSMF ¶ 24; Nix Decl. ¶ 24.) The driver responded that he planned to take Interstate 75 South to Interstate 575 North to get to Bankhead Highway. (GSMF ¶ 25; Nix Decl. ¶ 25.) That route would not have led the driver near his alleged destination, Bankhead Highway. (GSMF ¶ 26; Nix Decl. ¶ 26.)

When Sergeant Nix questioned the driver further about his travel plans, the driver became verbally defensive. (GSMF ¶ 27; Nix Decl. ¶ 27.)

Sergeant Nix then asked the driver whose car he was driving. (GSMF ¶ 28; Nix Decl. ¶ 28.) The driver responded that he was driving his wife's vehicle. (GSMF ¶ 29; Nix Decl. ¶ 29.) After examining the vehicle's registration, Sergeant Nix noticed that the driver did not have the same last name as the vehicle's registered owner. (GSMF ¶ 30; Nix Decl. ¶ 30.) Sergeant Nix asked the driver why his last name differed from that of the Equinox's registered owner, and the driver stated that he was not really married to the vehicle's registered owner, and that they were simply "together." (GSMF ¶¶ 31–32; Nix Decl. ¶¶ 31–32.) Sergeant Nix asked the driver what the registered owner's last name was, and the driver stated that he was not sure. (GSMF ¶¶ 33–34; Nix Decl. ¶¶ 33–34.) Sergeant Nix returned the driver's license to the driver and completed the warning citations. (GSMF ¶ 35; Nix Decl. ¶ 35.)

Sergeant Nix then asked the driver if there were illegal narcotics inside the Equinox, and the driver replied no. (GSMF ¶¶ 36–37; Nix Decl. ¶¶ 36–37.) Sergeant Nix also asked the driver if there were large amounts of currency inside the Equinox, and the driver hesitated before asking, " 'What?' " (GSMF ¶¶ 38–39; Nix Decl. ¶¶ 38–39.) Sergeant Nix repeated his question, and the driver responded that he had a couple of thousand dollars in the Equinox. (GSMF ¶¶ 40–41; Nix Decl. ¶¶ 40–41.) Sergeant Nix asked the driver how much currency was in the Equinox, and the driver stated that he did not know. (GSMF ¶ 42; Nix Decl. ¶ 42.)

### 3. The Search

Sergeant Nix then requested a K–9 unit to assist with a free air sniff of the Equi-

nox. (GSMF ¶ 43; Nix Decl. ¶ 43; Reneau Decl. ¶ 3; Broce Decl. ¶ 8.) Sergeant Reneau and Deputy Broce responded to the scene to assist with the traffic stop. (GSMF ¶¶ 46–47; Reneau Decl. ¶¶ 4, 6; Broce Decl. ¶ 9.) Deputy Broce arrived at the scene less than five minutes after receiving the request for a K–9 unit. (GSMF ¶ 47; Broce Decl. ¶ 10; Nix Decl. ¶ 44.)

After Deputy Broce arrived at the scene, he removed Kilo from his patrol car and had Kilo perform a free air sniff of the Equinox. (GSMF ¶ 52; Broce Decl. ¶ 12; Nix Decl. ¶ 45.) Kilo gave positive alerts for the odor of narcotics. (GSMF ¶ 53; Broce Decl. ¶ 13; Nix Decl. ¶ 46.)

Sergeant Nix informed the driver of the Equinox that, based on the results of the free air sniff, the officers were going to search the Equinox. (GSMF ¶ 54; Nix Decl. ¶ 47.) The driver stated that he had some currency in his bag, but that the money was not his. (GSMF ¶ 55; Nix Decl. ¶ 48.) Although Sergeant Nix asked the driver to whom the money belonged, the driver did not respond. (GSMF ¶ 56; Nix Decl. ¶ 49.)

The officers then searched the Equinox. (GSMF ¶ 57; Nix Decl. ¶ 50; Broce Decl. ¶ 14; Reneau Decl. ¶ 8.) During the search, Sergeant Nix discovered a clothing bag inside the rear cargo area of the Equinox. (GSMF ¶ 58; Nix Decl. ¶ 51.) Sergeant Nix found a plastic bag containing a large amount of United States currency (the "Defendant Currency") inside the clothing bag. (GSMF ¶ 59; Nix Decl. ¶ 52.) The Defendant Currency was separated into twelve bundles, each wrapped by a single black rubber band. (GSMF ¶ 60; Nix Decl. ¶ 53; Reneau Decl. ¶ 9.) The officers later counted the Defendant Currency and found that it totaled $11,320.

(GSMF ¶ 61; Nix Decl. ¶ 54; Brace Decl. ¶ 15; Reneau Decl. ¶ 9.) Eleven of the bundles each contained $1,000, while the twelfth bundle contained $320.00. (GSMF ¶ 62; Nix Decl. ¶ 55.)

Based on Sergeant Nix's observations and law enforcement experience, bundling money in large, even amounts is consistent with money involved in the drug trade. (GSMF ¶ 63; Nix Decl. ¶ 56.) When Sergeant Nix handled the Defendant Currency, he noticed that it had an odor of raw marijuana. (GSMF ¶ 64; Nix Decl. ¶ 57.)

Sergeant Reneau asked the driver where the Defendant Currency came from, and the driver replied that his " 'old lady' " had taken $14,000 from the bank and given it to him. (GSMF ¶¶ 65–66; Reneau Decl. ¶¶ 10–11.) A few minutes later, Sergeant Reneau asked the driver how much money his wife had taken out of the bank and given to him, and the driver replied that his wife had given him $5,000. (GSMF ¶¶ 67–68; Reneau Decl. ¶¶ 12–13.) Sergeant Reneau asked the driver about the inconsistent amounts, and the driver stated that Sergeant Reneau was confusing him. (GSMF ¶¶ 69–70; Reneau Decl. ¶¶ 14–15.)

Sergeant Reneau then asked the driver what he was doing with that amount of currency, and the driver replied that he was going to help out some of his " 'peeps.' " (GSMF ¶¶ 71–72; Reneau Decl. ¶¶ 15–16.) Sergeant Reneau asked the driver who his " 'peeps' " were and where they lived, and the driver stated that he did not want to answer any more questions. (GSMF ¶¶ 73–74; Reneau Decl. ¶¶ 18–19.)

Later, Sergeant Nix asked the driver why he had so much money, and the driver stated that he was delivering the money

for a friend. (GSMF ¶¶ 75–76; Nix Decl. ¶¶ 58–59.) The driver refused to give Sergeant Nix any information about the "friend." (GSMF ¶ 77; Nix Decl. ¶ 60.) Sergeant Nix asked the driver why he was delivering the money for his friend, and the driver responded, " 'You guys know the game.' " (GSMF ¶¶ 78–79; Nix Decl. ¶¶ 61–62.) Based on that response, Sergeant Nix believed that the driver was referring to the drug trade. (GSMF ¶ 80; Nix Decl. ¶ 63.) The driver further stated that he was " 'through delivering for this guy.' " (GSMF ¶ 81; Nix Decl. ¶ 64.) The driver refused to answer any more questions. (GSMF ¶ 82; Nix Decl. ¶ 65.)

Sergeant Reneau told the driver that the Defendant Currency would be seized, and seized the Defendant Currency as drug proceeds. (GSMF ¶ 83; Reneau Decl. ¶ 20.) The driver signed the property receipt as "Charles Gray Jr.," and the officers gave him a property receipt. (GSMF ¶ 84; Reneau Decl. ¶ 21 & Ex. B; Gov't Ex. E.) The driver left the scene in the Equinox. (GSMF ¶ 85; Reneau Decl. ¶ 22; Nix Decl. ¶ 66.)

Sergeant Reneau took custody of the Defendant Currency. (Nix Decl. ¶ 66; Broce Decl. ¶ 16.) Sergeant Reneau transported the Defendant Currency to the Tunnel Hill Police Department. (GSMF ¶ 86; Reneau Decl. ¶ 23; Broce Decl. ¶ 17.)

### 4. Free Air Sniff of the Defendant Currency

After the officers arrived at the Tunnel Hill Police Department, Sergeant Reneau and Deputy Broce conducted a free air sniff of the Defendant Currency. (GSMF ¶ 87; Reneau Decl. ¶ 24; Broce Decl. ¶ 18.) Sergeant Reneau and Deputy Broce used three bags to conduct the free air sniff. (GSMF ¶ 88; Reneau Decl. ¶ 25; Broce Decl. ¶ 19.)

Sergeant Reneau placed the Defendant Currency in one bag, and placed items of a similar size and weight in the remaining two bags. (GSMF ¶ 89; Reneau Decl. ¶ 26; Broce Decl. ¶ 20.) Sergeant Reneau then placed the three bags in a line. (GSMF ¶ 89; Reneau Decl. ¶ 26; Broce Decl. ¶ 21.) While handling the Defendant Currency, Sergeant Reneau noticed that it had an odor of raw marijuana. (Reneau Decl. ¶ 27.) Deputy Broce did not know which bag contained the Defendant Currency. (Broce Decl. ¶ 22.)

Deputy Broce had Kilo perform a free air sniff of the bags. (GSMF ¶ 90; Reneau Decl. ¶ 28.) Deputy Broce walked Kilo around each of the bags. (Broce Decl. ¶ 23.) Kilo gave a positive alert for the odor of narcotics only on the third bag, which contained the Defendant Currency. (*Id.*; Reneau Decl. ¶ 29; GSMF ¶ 91.)

### 5. Other Interactions With the Driver

Throughout Sergeant Nix's interactions with the Equinox's driver, Sergeant Nix called the driver "Charles," and the driver responded to that name and did not indicate that it was not his name. (GSMF ¶ 16; Nix Decl. ¶ 16.) In approximately December 2011, Sergeant Nix learned that Charles Gray, Jr. had died on or about October 20, 2010, more than six months prior to the traffic stop. (GSMF ¶ 17; Nix Decl. ¶ 17; Reneau Decl. ¶ 30.)[1] The Equinox was registered to Claimant.

---

[1]. A Social Security Death Record indicates that Charles Gray, Jr. died on October 20, 2010. (Gov't Ex. C.) A certified death certificate for Mr. Gray also states that Mr. Gray died on October 20, 2010. (Gov't Ex. H.)

(GSMF ¶ 18; Nix Decl. ¶ 18.) [2]

### 6. Administrative Proceedings

The Federal Bureau of Investigation ("FBI") adopted the seizure of the Defendant Currency. (GSMF ¶ 92; Gov't Ex. A–1.) On July 20, 2011, Claimant filed an administrative claim to the Defendant Currency, which the FBI initially rejected as deficient because Claimant failed to make the claim under oath, subject to penalty of perjury. (GSMF ¶ 96; Gov't Ex. A–4.) On July 21, 2011, the FBI sent a letter to Claimant informing her that her submission was deficient, and noting:

> Any factual recitation or documentation in a petition must be supported by a sworn affidavit of the person alleging an interest in the property. An unsworn declaration must be signed and contain the statement, "I declare under penalty of perjury that the foregoing is true and correct."

(Gov't Ex. A–4 at 2; GSMF ¶ 97.)

Claimant submitted another claim for the Defendant Currency to the FBI. (GSMF ¶ 93; Gov't Ex. A–2.) Under the section titled "INTEREST EXPLANATION," Claimant wrote: "Shopping & TRAVEL money personal use, bills etc." (Gov't Ex. A–2 at 1 (capitalization in original).) The claim contained the statement, "I attest and declare under penalty of perjury that the information provided in support of my claim is true and correct, to the best of my knowledge and belief." (*Id.* at 2; GSMF ¶ 98.)

The FBI then requested that the Government commence a judicial forfeiture ac-

tion relating to the Defendant Currency. (GSMF ¶ 94; Gov't Ex. A–1.)

### B. Procedural Background

On November 1, 2011, the Government filed this lawsuit. (Docket Entry No. 1.) The Government alleged that the Defendant Currency was subject to forfeiture under 21 U.S.C. § 881(a)(6) because it was furnished, or intended to be furnished, in exchange for a controlled substance, because it constitutes proceeds traceable to such an exchange, or because it was used, or intended to be used, to facilitate the sale or exchange of a controlled substance. (Compl. ¶ 66.)

On November 10, 2011, the Government issued a Notice of Filing Complaint for Forfeiture to Claimant. (Docket Entry No. 4.) That Notice stated, in relevant part:

> To avoid forfeiture of the property, any person claiming an interest in the Defendant property must file a verified Claim in the manner set forth in Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims on or before the deadline specifically stated below, which is at least 35 days after the date this notice was sent. *See* Rule G(5)(a). In addition, any person who files such a Claim shall file an Answer to the Complaint, or a motion under Rule 12 of the Federal Rules of Civil Procedure, not later than 21 days after the filing of the Claim. *See* Rule G(5)(b).

Supplemental Rule G(5)(a) provides in pertinent part: "(I) a person who as-

---

**2.** Counsel for the Government also submitted a declaration in support of the Government's Motion. (Gov't Ex. 4.) Because the Court does not generally permit counsel to serve both as attorneys and as witnesses in the same case, the Court has not included the statements contained in that declaration in this Order. The Court has, however, considered the documents attached to the declaration.

serts an interest in the Defendant Property may contest the forfeiture by filing a claim in the court where the action is pending ..." and "must (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D)." See Rule G(5)(a). Supplemental Rule G(5)(b) provides in pertinent part: "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."

The Claim and Answer shall be filed with the Office of the Clerk of Court, United States District Court for the Northern District of Georgia, Atlanta Division, 75 Spring Street, S.W., Suite 2201, Atlanta, Georgia 30303, with copies of each served upon Assistant U.S. Attorney Michael J. Brown, 75 Spring Street, S.W., Suite 600, Atlanta, GA 30303.

Pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims, on November 10, 2011, Plaintiff sent this Notice by certified mail, return receipt requested, to every person who reasonably appeared to be a potential claimant to the Defendant Currency on the facts known to Plaintiff. **Therefore, a verified Claim must be filed on or before December 16, 2011, and an answer to the complaint or a motion under Rule 12 within 21 days thereafter.**

(*Id.* at 1–3 (emphasis and omissions in original; footnote omitted).)

Claimant submitted a letter to counsel for the Government. (Gov't Ex. D.) On December 2, 2011, counsel for the Government wrote a letter to Claimant stating, in relevant part:

I have received a copy of your Claim in the above-referenced civil forfeiture action. However, it does not appear that you sent your Claim to the Clerk of District Court for filing, which is required under Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. In addition, the copy of the Claim you sent to me does not appear to comply with Rule G(5)(a)(i)(C).

Rule G(5)(a) expressly states that each claimant must file a claim "in the court where the action is pending" identifying the specific property claimed and his or her interest in the property, and that the claim must "be signed by the claimant under penalty of perjury" and served on the appropriate Assistant United States Attorney. If a potential claimant fails to file a verified claim with the court, that claimant lacks statutory standing to contest the forfeiture.

Please be aware that this Circuit has recognized that courts "consistently have required claimants to follow the language of the Supplemental Rules to the letter," and, as such, a district court is "entitled to insist upon strict compliance with the procedural requirements set forth in Rule G(5) and, thus, to strike appellant's claim for lack of statutory standing to contest the forfeiture."

As stated in the Notice of Filing Complaint for Forfeiture that the United States served on you on November 10, 2011, your deadline for filing a verified claim with the Clerk of District Court is on or before December 16, 2011, and your deadline for filing an answer to the complaint for forfeiture is within 21 days after filing your claim. The address for

where to send your verified claim and your answer to the complaint for forfeiture is as follows:

>Clerk of District Court
>
>600 East First Street
>
>Rome, Georgia 30161

(*Id.* at 1–2 (citations omitted).)

On December 8, 2011, the Clerk received a letter from Claimant dated November 12, 2011 and stating, in relevant part;

>I Dorothy Mae Robinson who asserts an interest in the currency seized.
>
>$11,320.00 in United States Currency on May 4, 2011[.]
>
>I am the sole owner of the currency seized.
>
>Charles Gray is deceased [sic], he is no longer with me. Cause of death Heart Attack.
>
>Gray was traveling south to visit family & friends to help & visit peers, because of the recent tornados [sic] & storms.

(Docket Entry No. 6.) The document was not signed under penalty of perjury. (*Id.*)

On that same day, the Clerk received another document from Claimant dated December 6, 2011, which stated, in relevant part:

>Yes I do own the Chevrolet Equinox 2010 Michigan tag # BKY 4481
>
>Yes I am the sole owner of the U.S. Currency $11,320.00
>
>Charles says officer pulled him over for changing lanes, when he stopped him.
>
>Gray, was traveling south to shop & visit family & friends.

>Yes I do keep my money inside plastic bag inside a suitcase.
>
>1 shirt 1 pair pants 1 undergarment, 1 pair shoes inside suit case in back of truck.
>
>[T]he reason I keep my money in my car.
>
>In 2008 we lost everything in a condo apartment [sic] fire, I lost money purse etc. Everything in fire.
>
>So I keep my money in my car.
>
>Yes Gray had some cash in his traveling bag.
>
>Gray & have been together for 17 years, Gray was traveling south to visit family members, he was concerned about his mom & family & friends, due to the tornadoes & bad weather.
>
>Mich law requires driver's [sic] to pull to the next lane if he observes officer in the same lane he is traveling in
>
>I believe when officer was asking Mr. Gray about the money they were giving him a hard time.
>
>During the search of the Chevrolet Equinox 2010, the officer did damage to the vehicle but did not find any drugs.
>
>On August 8, 2011 I Dorothy Mae Robinson filed a claim with FBI
>
>I am the sole owner of the Defendant Currency.

(Docket Entry No. 7 at 1–3.) That document also is not signed under penalty of perjury. (*Id.* at 3.)

Claimant did not file an Answer to the Complaint, and also did not file a Motion to Dismiss.

On December 21, 2012, the Government, through counsel, served Claimant with Special Interrogatories. (Gov't Ex.

F; Docket Entry No. 9.) Special Interrogatory No. 3 asked Claimant to: "Identify the person who was driving the Equinox at the time of the traffic stop on May 4, 2011 that led to the seizure of the Defendant Currency and provide that individual's address, telephone number(s), and other personal identifiers." (Gov't Ex. F at 7.) Special Interrogatory 12 stated: "In your letter asserting a claim to the Defendant Currency, you stated that Charles Gray is deceased and that his cause of death was a heart attack. Identify the date and the location, including city and state, of Charles Gray's death." (*Id.* at 11.)

Claimant served counsel for the Government with responses to the Special Interrogatories. (Gov't Ex. G.) Claimant's response to Special Interrogatory No. 3 states that the driver of the Equinox was "Charles Gray." (*Id.* at 1.) Claimant's response to Special Interrogatory No. 12 states that Charles Gray died on October 29, 2010, in Birmingham, Alabama. (*Id.* at 2.)

On March 21, 2012, the Government filed its Motion to Strike and Motion for Judgment on the Pleadings. (Docket Entry No. 10.) The Government sought to strike the claim filed by Claimant Dorothy Mae Robinson ("Claimant"). (*Id.*) The Government also moved for judgment on the pleadings. (*Id.*)

On April 10, 2012, the Court entered an Order converting the Motion for Judgment on the Pleadings to a Motion for Summary Judgment. (Order of Apr. 10, 2012.) The Court also directed Claimant to file her response, if any, to the Motion to Strike and Motion for Summary Judgment within twenty-one days. (*Id.*) On that same day, the Clerk issued a Notice directing Claimant to respond to the Motion for Summary Judgment. (Docket Entry No. 12.)

On April 20, 2012, Claimant filed a response. (Docket Entry No. 13.) In that response, Claimant stated:

> I am the sole owner of the $11,320.00 in United States Currency et al.

> I have answered all questions.

(*Id.* at 1.) Claimant, however, did not respond to the Government's Statement of Material Fact or provide any explanation for her failure to file an Answer or a verified claim signed under penalty of perjury. (*Id.* at 1–3.)

The Government has filed a reply in support of its Motion to Strike and Motion for Summary Judgment. (Docket Entry No. 14.) The Government also has indicated that it does not intend to supplement its Motion following the April 10, 2012 Order. (*Id.* at 2 n. 1.) Under those circumstances, the Court finds that this matter is ripe for resolution.

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the record. *Reese v. Herbert,* 527 F.3d 1253, 1269 (11th Cir.2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Allen v. Bd. of Public Educ. for Bibb County,* 495 F.3d 1306, 1313 (11th Cir.2007). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that

demonstrate the existence of a genuine issue for trial. *Allen,* 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1241 (11th Cir.2007). The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1274 (11th Cir.2008) (quoting *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990)). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. *Reese,* 527 F.3d at 1271; *Skop v. City of Atlanta, Ga.,* 485 F.3d 1130, 1140 (11th Cir.2007). Finally, the Court does not make factual determinations. *In re Celotex Corp.,* 487 F.3d at 1328.

The standard for a motion for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on the relevant issue. As the United States Court of Appeals for the Sixth Circuit has noted:

> "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

*Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting William W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.' " *Franklin v. Montgomery County, Md.,* No. DKC 2005–0489, 2006 WL 2632298, at *5 (D.Md. Sept. 13, 2006) (quoting *Hoover Color Corp. v. Bayer Corp.,* 199 F.3d 160, 164 (4th Cir.1999)) (alteration in original).

## IV. Discussion

### A. Claimant's Standing

■ A claimant in a civil forfeiture action must establish both the requirements of Article III standing and statutory standing. *United States v. $688,670.42 Seized from Regions Bank Account No. XXXXXX5028,* 449 Fed.Appx. 871, 873 (11th Cir.2011) (per curiam); *United States v. $114.031.00 in U.S. Currency,* 284 Fed.Appx. 754, 755 (11th Cir.2008) (per curiam). The Court first determines whether Claimant has satisfied the Article III standing requirements, and then addresses the statutory standing question.

#### 1. Article III Standing

■ "It is well established that in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *United States v. $38,000.00 in U.S. Currency,* 816 F.2d 1538, 1543 (11th Cir.1987) (quoting *United States v. One 18th Century Colombian Monstrance,* 802 F.2d 837, 838 (5th Cir.1986)). "The Article III standing inquiry focuses on the existence

of an injury." *$688.670.42 Seized from Regions Bank,* 449 Fed.Appx. at 874. An owner of property has Article III standing to contest the property's forfeiture. *$38.000.00 in U.S. Currency,* 816 F.2d at 1544. "Ownership may be established by proof of actual possession, control, title, and financial stake." *United States v. One (1) 1983 Homemade Vessel Named Barracuda,* 625 F.Supp. 893, 897 (S.D.Fla.1986). "It is well settled that a bare assertion of ownership in the property, without more, is not enough to prove an ownership interest sufficient to establish standing." *Arevalo v. United States,* No. 05–110, 2011 WL 442054, at *3 (E.D.Pa. Feb. 8, 2011). Instead, "a claimant must show that he has a colorable ownership or possessory interest in the funds." *Id.*

■ Here, Claimant has produced no evidence showing that she has a colorable ownership or possessory interest in the Defendant Currency. Instead, Claimant simply has submitted bare assertions of ownership, which are simply not sufficient to establish Article III standing. *United States v. $26,620.00 in U.S. Currency,* No. Civ. A. 2:05CV50WCO, 2006 WL 949938, at *7 (N.D.Ga. Apr. 12, 2006) (concluding claimant's "mere allegation" that he was owner of currency was insufficient to establish ownership). Because Claimant lacks Article III standing, the Court strikes her Claim and Answer.

### 2. Statutory Standing

■ A claimant also must satisfy the statutory standing requirements to challenge a forfeiture. The claimant bears the burden of establishing standing. *$114,031.00 in U.S. Currency,* 284 Fed. Appx. at 756.

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture ("Supplemental Rules") and 18 U.S.C. § 983(a)(4) govern civil forfeiture actions and set forth statutory standing requirements for contesting a forfeiture. *United States v. $12.126.00 in U.S. Currency,* 337 Fed.Appx. 818, 818–19 (11th Cir.2009) (per curiam) (citing *$38,000.00 in U.S. Currency,* 816 F.2d at 1544–45). Rule G(5)(b) of the Supplemental Rules provides, in relevant part: "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 20 days after filing the claim." Supp. Rule G(5)(b). Rule G(8)(c) of the Supplemental Rules states:

(i) At any time before trial, the government may move to strike a claim or answer:

(A) for failing to comply with Rule G(5) or (6), or

(B) because the claimant lacks standing.

(ii) The motion:

(A) must be decided before any motion by the claimant to dismiss the action; and

(B) may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence.

Supp. R. G(8)(c).

■ A district court has discretion to extend the time for filing an answer, but also may insist on strict compliance with the Supplemental Rules. *$12,126.00 in U.S. Currency,* 337 Fed.Appx. at 818–19 (citing *United States v. $125,938.62,* 370 F.3d 1325, 1328–29 (11th Cir.2004)). "[C]laimants must strictly adhere to the procedural requirements of the Supplemental Rules to

achieve statutory standing to contest a forfeiture action." *Id.* at 820.

Here, Claimant failed to file an Answer or a motion under Rule 12 within twenty days after filing her Claim. The Court cannot find that special or extenuating circumstances exist that would warrant extending the time for Claimant to file an Answer or excusing her failure to comply with Rule G(5)(b) of the Supplemental Rules. Indeed, the Notice of Filing Complaint for Forfeiture served on Claimant by the Government set forth the requirement that Claimant file an Answer within twenty-one days after filing a Claim.

■ Under the above circumstances, "this Court is left with no explanation for [Claimant's] failure to file an answer, and no colorable basis for deviating from the strict compliance with the standing aspects of the Supplemental Rules which federal courts typically enforce strictly in the civil forfeiture context." *United States v. 40 Acres of Real Prop., More or Less*, 629 F.Supp.2d 1264, 1274–75 (S.D.Ala.2009). The Court consequently finds that the failure by Claimant to file an Answer or a motion under Rule 12 in a timely fashion, as required by Supplemental Rule G(5)(b), deprives Claimant of statutory standing to pursue her claim to the Defendant Property. *Id.* at 1275; *see also United States v. Approximately $73,562 in U.S. Currency*, No. C 08–2458 SBA, 2009 WL 1955800, at *2 (N.D.Cal. July 6, 2009) ("The pleading requirements are strictly construed and the failure to file an answer precludes standing to challenge the forfeiture."). The Court therefore grants the Government's Motion to Strike, and strikes the Claim filed by Claimant, based on Claimant's failure to comply with applicable procedural requirements. *United States v. $12,126.00 in U.S. Currency*, 337 Fed.

Appx. 818, 820 (11th Cir.2009) (per curiam); *40 Acres of Real Prop.*, 629 F.Supp.2d at 1275; *see also Approximately $73.562 in U.S. Currency*, 2009 WL 1955800, at *2 ("A claim may be stricken for non-compliance with pleading requirements for challenging a proposed forfeiture.").

Section 983 and Supplemental Rule G also require that a claimant file a verified claim asserting an interest in the property. *United States v. One 2003 Chevrolet Suburban*, Civil Case No. 7:10–CV–0153 (HL), 2011 WL 4543471, at *1 (M.D.Ga. Sept. 29, 2011). The claim must identify the property claimed, identify the claimant and state the claimant's interest in the property, be signed under penalty of perjury, and be served on the designated government attorney. Supp. Rule G(5)(a)(i).

Here, Claimant's claim is not signed under penalty of perjury. Claimant's claim thus fails to satisfy the statutory requirements. *One 2003 Chevrolet Suburban*, 2011 WL 4543471, at *2 (finding claim failed to satisfy required elements where it failed to give full statement of claimant's interest and did not include required oath or affirmation); *see also United States v. One Men's Rolex Pearl Master Watch*, 357 Fed.Appx. 624, 627 (6th Cir.2009) (granting motion to dismiss where claimant failed to sign claim under penalty of perjury). Under those circumstances, the Court finds that it is appropriate to strike Claimant's claim. *One 2003 Chevrolet Suburban*, 2011 WL 4543471, at *2.

### 3. Summary

For the reasons discussed above, the Court finds that Claimant lacks both statutory standing and Article III standing to pursue her claim. The Court therefore grants the Government's Motion to Strike as to Claimant's claim.

## B. Whether the Defendant Currency Is Subject to Forfeiture

Alternatively, the Government argues that it is entitled to judgment in its favor because no genuine dispute remains as to whether the Defendant Currency is subject to forfeiture. The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") applies to the instant forfeiture action. Under CAFRA, money is subject to civil forfeiture if it is "furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter," if it is "proceeds traceable to such an exchange," or if it is "used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6); *see also United States v. $291,828.00 in United States Currency*, 536 F.3d 1234, 1236–37 (11th Cir.2008) (per curiam) (same).

 Under CAFRA, the Government "must prove by a preponderance of the evidence that the defendant property is subject to forfeiture." *United States v. United States Currency Totaling $101,207.00*, No. CV 101–162, 2007 WL 4106262, at *5 (S.D.Ga. Nov. 16, 2007); *see also* 18 U.S.C. § 983(c)(1) (stating that, in civil forfeiture action, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture"). Consequently, to prevail in this case, "the Government must show by a preponderance of the evidence that the currency at issue was the proceeds of drug offenses or used or intended to be used to facilitate a drug offense." *Id.*

 The Government " 'may use both circumstantial evidence and hearsay' " to satisfy its burden of proof. *$291,828.00 in United States Currency*, 536 F.3d at 1237 (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1440 (11th Cir. 1991)). The Government "may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 U.S.C. § 983(c)(2); *see also $291,828.00 in United States Currency*, 536 F.3d at 1237 (stating same). The Court must evaluate the evidence "with 'a common sense view to the realities of normal life.' " *$291,828.00 in United States Currency*, 536 F.3d at 1237 (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1440). For the following reasons, the Court concludes that the evidence, even viewed in the light most favorable to Claimant as the non-movant, demonstrates that the Defendant Currency is subject to forfeiture.

 First, the evidence fails to indicate a legitimate source for the Defendant Currency.[3] This factor counsels in favor of a finding that the Defendant Currency is related to illegal drug activity. *See United States v. $252,300.00 in United States Currency*, 484 F.3d 1271, 1275 (10th Cir.2007) (concluding claimant's lack of evidentiary support for sources of defendant currency, including fact that claimant and other alleged contributor both had limited incomes and significant debts during relevant period, was probative of illegal drug activity); *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00)*, 403 F.3d 448, 469 (7th Cir.2005) (concluding fact that explanations of claimant regarding sources of cash "did not add up" sup-

---

**3.** Claimant has submitted a list of "documents" that she apparently contends are possible legitimate sources for the Defendant Currency. That list, however, does not indicate when the alleged payouts occurred and provides only conclusory information.

ported finding that property was subject to forfeiture); *United States v. $118,170.00 in U.S. Currency,* 69 Fed.Appx. 714, 717 (6th Cir.2003) (observing that claimant's "sketchy" financial history and insufficient income to explain large amount of money seized supported conclusion that defendant currency was subject to forfeiture); *United States v. $174,206.00 in U.S. Currency,* 320 F.3d 658, 662 (6th Cir.2003) (finding government showed, by preponderance of evidence, that defendant currency was traceable to drug offenses where evidence demonstrated that claimants' legitimate income was insufficient to explain large amount of currency found in their possession); *United States v. U.S. Currency, in the Amount of $150,660.00,* 980 F.2d 1200, 1207 (8th Cir.1992) ("The absence of any apparent verifiable, legitimate source for the [defendant currency] ... strongly suggests that the defendant currency was connected with drug activity.").

Further, the fact that the Defendant Currency was packaged in bundles wrapped with rubber bands is probative of a connection to illegal activity, given the law enforcement officers' testimony that, in their experience, individuals engaged in drug activity commonly package money that way. *United States v. $242,484.00,* 389 F.3d 1149, 1161–62 (11th Cir.2004) (noting that rubber-banded money may be indicative of connection to drug activity). The fact that the Defendant Currency was concealed, however, is of little probative value. *See United States v. One Lot of U.S. Currency ($36,634),* 103 F.3d 1048, 1055 n. 8 (1st Cir.1997) ("Few people carry money, especially large sums, in any way other than 'concealed.'").

■ The Eleventh Circuit has held that "a large amount of currency, in and of itself, is insufficient to establish probable cause for forfeiture under 21 U.S.C. § 881(a)(6)." *United States v. $121,100 in United States Currency,* 999 F.2d 1503, 1507 (11th Cir.1993). The large quantity of cash seized here, however, "is highly probative of a connection to some illegal activity." *Id.; see also $242,484.00,* 389 F.3d at 1161 ("Although the quantity of the cash alone is not enough to connect it to illegal drug transactions, it is a significant fact and weighs heavily in the probable cause calculus.") (citation omitted); *United States v. $67,220.00 in United States Currency,* 957 F.2d 280, 285 (6th Cir.1992) ("carrying a large sum of cash is strong evidence of some relationship with illegal drugs"); *United States v. $22,991.00, more or less, in United States Currency,* 227 F.Supp.2d 1220, 1232–33 (S.D.Ala.2002) (noting that fact that defendant currency of $22,991.00 was "an unusually large amount of cash to be transported in the trunk of an automobile," which was highly probative of link between defendant currency and illegal drug activity).

The record also demonstrates that the driver of the Equinox made several misstatements and conflicts, including erroneously giving his name as that of an individual who had died, erroneously stating that he and Claimant were married, and falsely claiming that he intended to reach Bankhead Highway by taking Interstate 75 South to Interstate 575 North. Viewed in the light most favorable to Claimant, those misstatements and conflicts are "probative of possible criminal activity." *$67,220.00 in United States Currency,* 957 F.2d at 286; *see also $242,484.00,* 389 F.3d at 1164–65 (observing that conflicting stories were probative of connection to illegal drug activity); *United States Currency Totaling $101,207.00,* 2007 WL 4106262, at *6 (observing that false statements of claimant

and his son were "further circumstantial evidence of illegal activity").

■ Additionally, Kilo gave a positive drug alert to the Defendant Currency. Although other Circuits have expressed concern about the reliability of positive drug dog sniffs of currency, the Eleventh Circuit has declined to adopt an "ever-lasting scent, global contamination theory." *$242,484.00*, 389 F.3d at 1165–66 & n. 10 (collecting cases). Instead, the Eleventh Circuit has observed that a positive drug dog alert to currency is relevant to determining whether the currency at issue is proceeds of an illegal drug transaction. *Id.* at 1166. Given that authority, the Court concludes that the positive drug dog alert weighs in favor of concluding that the Defendant Currency is proceeds of, or traceable to, an illegal drug transaction.

Given the factors discussed above, the Court finds that the Government has demonstrated by a preponderance of the evidence that the Defendant Currency is subject to forfeiture. The Court therefore grants summary judgment in favor of the Government.

## V. Conclusion

ACCORDINGLY, the Court **GRANTS** the Government's Motion to Strike [10–1], and **STRIKES** Claimant's Claim to the Defendant Currency for lack of statutory standing and lack of Article III standing. The Court also **GRANTS** the Government's Motion for Judgment on the Pleadings [10–2], which the Court has converted to a Motion for Summary Judgment, and finds that the Defendant Currency is forfeitable to the Government. The Court **DIRECTS** the Clerk to enter judgment in favor of the Government and against Claimant, and to **CLOSE** this case.

The Court **DIRECTS** the Clerk to **MAIL** a copy of this Order to Claimant at her last-known address: 825 Hazen St. SE, Grand Rapids, Michigan, 49507.