**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

$252,300.00 IN UNITED STATES
CURRENCY, More or Less,

Defendant-Appellant,

LEVONZELL NOWDEN,

Claimant-Appellant.

No. 06-3164

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 04-CV-1296-KMH)**

---

Submitted on the briefs:[*]

Robert M. Lott, Robert M. Lott & Associates, Culver City, California for
Claimant-Appellant.

Colin D. Wood, Special Assistant United States Attorney, Eric F. Melgren, United
States Attorney, Wichita, Kansas for Plaintiff-Appellee.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **McCONNELL**, Circuit Judge.

**LUCERO**, Circuit Judge.

The government brought this civil in rem forfeiture action pursuant to 21 U.S.C. § 881(a)(6) seeking forfeiture of $252,300 in U.S. currency. Section 881(a)(6) authorizes forfeiture of all proceeds traceable to a controlled-substance exchange and all monies used or intended to be used to facilitate such an exchange. Kansas Highway Patrol troopers found the money hidden in a locked compartment under the sleeper area of a semi tractor-trailer truck driven by claimant Levonzell Nowden. After a bench trial, the district court[1] entered a judgment forfeiting the currency to the United States. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM**.

**I**

On March 25, 2004, Nowden was driving the truck westbound on Interstate 70 in Kansas when he was lawfully stopped for a traffic violation. His friend Lee Pierce was a passenger and co-driver. Nowden informed the troopers that he had driven a load of produce from California to New Jersey, and was returning to California. He then consented to a search of the truck and trailer. When the

---

[1] The parties consented to proceed before a magistrate judge. See 28 U.S.C. § 636(c)(1).

troopers asked him about a locked compartment under the sleeper bed in the back of the cab, he said he had never been under the sleeper and did not know how to open the compartment. Upon locating the latch and opening the compartment, the troopers found two sealed cardboard boxes, both addressed to "Mabel Smith." One contained approximately $60,000 in cash, bundled in rubber bands, in a plastic bag; the other contained a locked briefcase. Nowden and Pierce disclaimed ownership of the briefcase and claimed ignorance of the lock combination. Ultimately, the briefcase was opened to reveal approximately $191,000 in cash, also arranged in bundles with rubber bands and sealed in plastic bags. A certified Kansas Highway Patrol dog alerted to the presence of a narcotic odor on the currency. In addition, the troopers smelled the odor of marijuana emanating from the currency.

The troopers reported that Nowden was extremely nervous during the encounter. He gave inconsistent statements about how much money was in the boxes, stating first that the amount was $140,000, then $160,000, and then $156,000. He also stated that $71,000 belonged to him and $81,000 belonged to Pierce. Pierce gave inconsistent information as well, first stating that $86,000 was his, but later stating that only $27,000 belonged to him.

The district court found "not credible" Nowden's trial testimony about where the $252,300 in currency came from. Nowden testified that its sources were: "(1) a $200,000 loan from Terry Carter, (2) a $30,000 or $35,000 loan

-3-

from Lee Pierce, (3) a $10,000 to $25,000 gift from Nowden's mother, and (4) Nowden's personal savings." Nowden provided no documentation pertaining to the loans or his savings. Nor did he produce evidence to support his claim that the cash was to be used to purchase a truck for his nascent trucking business. Further, the district court found that the trucking business plan "was extremely vague and made no business or economic sense." In addition, the district court refused to credit Carter's deposition testimony that he loaned Nowden $200,000. That testimony was incredible, in the district court's estimation, because Carter's tax returns showed that he made less than $18,000 annually, he owed $27,000 in back taxes at the time of the seizure, and his proffered documents did not support his claim that he accumulated $200,000 through credit-card cash advances. The court also found that Nowden's testimony was "inconsistent with [his] earlier statements to the [Kansas Highway Patrol] and also inconsistent with Lee Pierce's testimony." Pierce himself gave contradictory statements about how much of the money belonged to him and where he got it.

## II

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." Holdeman v. Devine, 474 F.3d 770, 775 (10th Cir. 2007). On appeal, Nowden does not challenge the district court's findings of fact. Rather, he maintains that those findings are insufficient to establish that the currency at issue was traceable to drugs, and

therefore the government failed to prove entitlement to forfeiture under

§ 881(a)(6). Nowden also argues that the government failed to show that the

currency is the type of asset that may be seized under 18 U.S.C. § 981, and that

the fact that he was never charged with a crime in connection with this incident

makes reliance on § 981 inappropriate.

This action is governed by § 2 of the Civil Asset Forfeiture Reform Act of

2000 ("CAFRA"), codified at 18 U.S.C. § 983, which places the burden of proof

on the government "to establish, by a preponderance of the evidence, that the

property is subject to forfeiture." § 983(c)(1). Accordingly, the government

bears the burden to establish a "substantial connection between the property and

the offense." § 983(c)(3). The government was entitled to use evidence gathered

after filing the forfeiture complaint to meet its burden of proof. § 983(c)(2). The

government's theory of forfeiture is that the currency "was furnished or intended

to be furnished in exchange for a controlled substance, or constitutes proceeds

traceable to such an exchange, or was used or intended to be used to facilitate"

criminal acts.

**A**

We first reject Nowden's argument that he is entitled to relief because the

government failed to prove a case for forfeiture under 18 U.S.C. § 981. He did

not present this argument to the district court; consequently, we do not address it

on appeal. See Wilburn v. Mid-South Health Dev., Inc., 343 F.3d 1274, 1280

(10th Cir. 2003) ("An issue is waived if it was not raised below in the district court.").

**B**

Nowden argues in the alternative that the evidence was inadequate to establish by a preponderance of the evidence a substantial connection between the currency and a controlled substance. The result of this appeal depends upon the legal significance given to the facts surrounding the forfeiture. Accordingly, we review those facts to determine if they are probative and we evaluate what weight each is entitled to receive. In doing so, we employ a common-sense approach, see United States v. $242,484.00, 389 F.3d 1149, 1167 (11th Cir. 2004), and "consider the totality of the evidence as a whole and in the appropriate context," United States v. Funds in the Amount of $30,670.00, 403 F.3d 448, 469 (7th Cir. 2005).

(1) – Nowden's nervousness. Nowden's nervousness may be considered probative, but we conclude that it is "of minimal probative value, given that many, if not most, individuals can become nervous or agitated when detained by police officers." United States v. $10,700.00 in U.S. Currency, 258 F.3d 215, 226 (3d Cir. 2001).[2]

---

[2] $10,700.00 was decided under pre-CAFRA law, which required the government initially to demonstrate only probable cause to forfeit assets. See 258 F.3d at 222. Pre-CAFRA cases continue to be relevant, however, because "[f]actors that weighed in favor of forfeiture in the past continue to do so now –

(continued...)

-6-

(2) – Inconsistent statements. Nowden denied knowing how to open the locked compartment under the sleeper bed and claimed he had no knowledge of the briefcase or the combination for its lock. He then made inconsistent statements about how much money was in the truck, as did Pierce. Nowden's initial statements about the currency are inconsistent with his later testimony that the currency was carefully collected for a specific business venture. We conclude that the multiple changes in their stories are of significant probative value. See $30,670.00, 403 F.3d at 467; $242,484.00, 389 F.3d at 1164.

(3) – Concealment of the currency. We agree with the First and Third Circuits' observation that it is not particularly significant that a claimant concealed his money, because it is customary for people to carry cash, especially large amounts of cash, "concealed." $10,700.00, 258 F.3d at 233; United States v. One Lot of U.S. Currency ($36,634.00), 103 F.3d 1048, 1055 n.8 (1st Cir. 1997), superceded by statute on other grounds as recognized in United States v. Lopez-Burgos, 435 F.3d 1, 2 (1st Cir. 2006).

(4) – Known drug route. The district court found it probative that Nowden and Pierce were traveling through Kansas on a "known drug route." We do not find it suspicious that a trucker hauling produce from California to New Jersey

_____

[2](...continued)
with the obvious caveat that the government must show more or stronger evidence establishing a link between forfeited property and illegal activity." $30,670.00, 403 F.3d at 469.

-7-

would travel on Interstate 70.[3]  Consequently, "we cannot credit the fact that the claimant[ was] using a major interstate to be probative of drug trafficking." $10,700.00, 258 F.3d at 228.

(5) – Currency amount and wrapping.  The seized currency, amounting to over a quarter of a million dollars in bills of various denominations, was bundled in stacks held by rubber bands and wrapped in cellophane.  A large amount of currency, while not alone sufficient to establish a connection to a drug transaction, is "strong evidence" of such a connection.  United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 877 (10th Cir. 1992).  "A common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages . . . ." $242,484.00, 389 F.3d at 1161; see also $10,700.00, 258 F.3d at 226, 232. Moreover, "[w]rapping cash in cellophane-type material is a technique known to be used by drug dealers to prevent discovery by drug-sniffing dogs."

---

[3]  Generalized allegations about "known drug sources," "known drug destinations," and "known drug routes" do not provide a nexus to drugs on these facts.  Surely produce trucks regularly travel between California and the east coast, often using Interstate 70 as their route.  When analyzing the more common question of whether reasonable suspicion exists to search for drugs, we have noted that this is an exceptionally weak basis to justify a search.  See United States v. Williams, 271 F.3d 1262, 1270 (10th Cir. 2001).  So many locales have been labeled "known drug sources" by law enforcement that it appears nearly any trip down the interstate would place one enroute to or from an alleged drug source.  See United States v. Beck, 140 F.3d 1129, 1138 & n.3 (8th Cir. 1998) (cataloguing locales identified by law enforcement officials as a "known drug source").

$242,484.00, 389 F.3d at 1162. Accordingly, this fact must be given significant probative value.

(6) – Lack of evidentiary support for source claims. Although the amount of currency is not dispositive, it is of greater significance when coupled with Nowden's inconsistent statements about the presence and amount of currency in the truck and the utter lack of evidence to support his claims that the money came from loans. Nowden contended that he borrowed the bulk of the currency, $200,000, from Carter, yet he could produce no documents to substantiate the transaction. See id. at 1164 (finding significant claimant's "total lack of any documentation to support [her stories]"). Nowden's claim that he and Pierce each contributed significant funds to the confiscated currency is similarly unsupported. Instead, the evidence showed that both men had limited incomes and significant debts during the relevant period. We determine that this evidence is entitled to considerable weight. See United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) (giving controlling weight to evidence that "the Claimants' legitimate income was insufficient to explain the large amount of currency found in their possession").

(7) – Odor of marijuana on the currency. The troopers detected a strong odor of marijuana on the currency. In addition, a drug dog alerted to the currency. The troopers' report sufficiently connects the currency to marijuana. Therefore, we need not join the debate over the significance of a drug-dog alert

on currency.  Compare $10,700.00, 258 F.3d at 229-30 (attaching no significance to drug-dog alert to seized currency where record contained no evidence of dog's training and degree of accuracy in detecting narcotics on currency), with $30,670.00, 403 F.3d at 455-62 (discussing scientific literature on drug-dog sniffs and concluding evidence was sufficient to accord probative weight to dog alert in case at bar).  Together with the other factors surrounding the seizure, the smell of marijuana on the currency is strongly probative of a link between the money and drug trafficking.  See, e.g., United States v. $117,920.00 in U.S. Currency, 413 F.3d 826, 829 (8th Cir. 2005) (relying in part on marijuana smell emanating from bags of currency to affirm forfeiture).

Viewing these factors in context, and based on the totality of the circumstances, we conclude that the government established by a preponderance of the evidence that the $252,300 in U.S. currency Nowden was carrying in his truck is substantially connected to illegal drug trafficking.  Accordingly, the district court properly ordered the currency forfeited to the government.

### III

The judgment of the district court is **AFFIRMED**.