ACCEPTED
14-14-00385-cv
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/18/2015 3:14:11 PM
CHRISTOPHER PRINE
CLERK

# CASE NO. 14–14–00385–CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/18/2015 3:14:11 PM
CHRISTOPHER A. PRINE
Clerk

**IN THE FOURTEENTH COURT OF APPEALS,
HOUSTON, TEXAS**

**APPROXIMATELY $31,421.00,**
*Appellant*

v.

**STATE OF TEXAS,**
*Appellee*

**On Appeal from the 157th Judicial District Court,
of Harris County, Texas, Cause No. 2012–13933**

**APPELLANT'S RESPONSE TO MOTION FOR EN BANC RECONSIDERATION**

TO THE HONORABLE FOURTEENTH COURT OF APPEALS:

## Introduction

The State rehashes and regurgitates the same tenuous claims in its motion for rehearing that the panel correctly rejected in reversing the jury's finding that the money seized from Enriquez was contraband. The State's reurged claims do no better the second time around. The State hangs its hat on suspicion, hunches, and speculation—none of which constitutes

1

evidence. The following evidence actually in the record—mostly ignored by the State—demonstrates just how flimsy the State's case is:

- The officers did not find any drugs, drug paraphernalia, or guns in Enriquez's bag, much less any marijuana, heroin, cocaine, or methamphetamine. (2 RR at 145:18–146:5).

- The lead officer, Arnold Alvarez, admitted he had ***no evidence*** of the alleged underlying criminal activity (illicit drug transactions) relied upon by the State for forfeiture.

- The canine handler admitted the dog alerted to Enriquez's bag—and not the money seized from Enriquez. (3 RR at 69:10–70:18; 82:5–7) ("Did Diego alert to the bag or did he alert to the money?" ... "He alerted to the bag.").

- The canine handler admitted that the dog alert merely gave rise to a ***suspicion*** that illegal narcotics were recently in or around the bag. (3 RR at 75:14–76:3) ("I guess it would be suspicion that narcotics was around or in.").

- Both Enriquez and Chacon were no–billed by the grand jury one month after their arrests. (DX 2; DX 3).

- The State—represented by the same district attorney's office that prosecuted the forfeiture proceedings—did little to pursue criminal charges against this alleged drug money courier, as the State elected to not call any of the officers involved in the seizure of Enriquez's bag to testify before the grand jury even though they were presumably available. (2 RR at 112:10–14; 3 RR at 22:20–23:4; 71:24–72:11).

Despite this evidence—mostly comprised of admissions by the officers—the State claims that "the cumulative force of all the evidence, under the totality of the circumstances," leads to the conclusion that the evidence is legally sufficient. But the "evidence" and "circumstances" cited

by the State are nothing more than rank suspicion and impermissible inference stacking, neither of which constitutes competent evidence.

## Argument & Authorities

The panel correctly determined that the evidence is legally insufficient to support the jury's finding that the money seized from Enriquez was contraband. To establish that the money was contraband, the State was required to prove the money was used or intended to be used in the commission in certain specified felony offenses. In other words, the State was required to show that the money was connected to criminal activity. The State failed to do so.

**A.    The lead officer admitted he had no evidence of the alleged underlying criminal activity giving rise to the seizure.**

The State's theory in this case was that Enriquez was transporting the proceeds of drug transactions from Atlanta to Mexico. (2 RR at 51:22–52:10) (opening statement); (3 RR at 26:5–27:11, 34:3–8 (officers claimed that drugs are sold in the Atlanta area and then the money is brought back to Mexico); (3 RR at 111:10–11, 113:3–5, 117:12–20, 119:17–19, 123:16–18) (closing argument).  The State's theory was unsupported by any competent evidence. The lead officer who seized the money from Enriquez admitted as much.

3

As an initial matter, the officers did not find any drugs, drug paraphernalia, or guns in Enriquez's bag, much less any marijuana, heroin, cocaine, or methamphetamine. (2 RR at 145:18–146:5). It is therefore not surprising that Arnold Alvarez—the lead officer in this case—**admitted** that he had **no evidence** that the alleged underlying criminal activity, drug transactions, ever occurred. To be clear, Alvarez didn't say he lacked direct evidence of any drug deal occurring. Nor did Alvarez say he had circumstantial evidence that a drug deal occurred. Alvarez directly and unequivocally admitted he had no evidence that the "drug deals" giving rise to the seizure actually occurred. (2 RR at 152:1–23). Alvarez admitted (1) he didn't know where the alleged drug deals took place, (2) he had no idea who was involved, (3) he had no idea how much money was exchanged, and (4) he had no idea how much drugs were exchanged. (*Id.*). And Alvarez admitted that he had no evidence that any such drug deal even happened. (*Id.*).

Alvarez's admissions cannot be ignored. Yet the State failed to address these admissions in its brief and again failed to address them in its motion for rehearing. The State offers no explanation as to how the evidence is legally sufficient to establish that the money was the proceeds of criminal activity, *i.e.*, illegal drug transactions, when its lead officer

4

admitted he had no evidence that the alleged criminal activity ever occurred. The State cannot escape these fatal admissions despite its best efforts to ignore them. If there is no evidence of the requisite criminal activity, then there is no evidence the money was the proceeds of criminal activity.

## B. The dog alert is no evidence that the money was the proceeds of criminal activity.

The State relies on an alleged dog alert to support the jury's finding that the money was contraband. Specifically, the State claims its canine handler testified that the reason the dog alerted to Enriquez's bag was "likely because the money inside the bags had recently been in close proximity to a large amount of drugs." Mtn. Recon. At 10, ¶ 17. This testimony is nowhere in the record. Regardless, the State again ignores the actual evidence in the record that dictates the dog alert cannot constitute evidence that the money seized from Enriquez was contraband.

As an initial matter, Enriquez must address the State's misrepresentation of the record. The State claims its canine handler testified that the reason the dog alerted to Enriquez's bag was "likely because the money inside the bags had recently been in close proximity to a large amount of drugs." Mtn. Recon. At 10, ¶ 17. This testimony is nowhere

to be found in the record. The canine handler's actual testimony was that the dog alerted to Enriquez's bag, as evidenced by the following exchanges:

Q. And what happened?

A. Diego did a sniff of that luggage. And when he sniffed at the scene, his breathing tail [sic] stopped and he sat and stared at the piece of luggage giving me an alert.

Q. What does that indicate to you?

A. That he is getting an odor of narcotics emulating [sic] from that piece of luggage.

****

Q. Okay. And again, as a trained and experienced narcotics canine handler, Diego's alert means what to you?

A. He is telling me that he's sniffed an odor of narcotics coming from the object that he's alerting to.

Q. What does that mean about that object?

A. It means that there [are] odors of narcotics emulating [sic] from that object.

****

Q. My question is: Does Diego's alert prove [as] a fact that narcotics [were] in the bag or does it just rise— give rise to a suspicion that narcotics were around the bag?

6

> A. His alerts are coming from the bag itself, from the item itself. Whether it's an exterior or interior, he doesn't —I have no way of knowing.

(3 RR at 69:15–21); (*Id.* at 71:11–18); (*Id.* at 75:7–13).

As the Court can see, the canine handler testified that the dog alerted to Enriquez's bag, and not to any money that may have been inside the bag. Lest there be any doubt as to what the dog alerted to, whether the bag or the money, the canine handler testified as follows:

> Q. Did Diego alert to the bag or did he alert to the money?
>
> A. He alerted to the bag.

(3 RR at 82:5–7).[1]

And to put a finer point on it, the canine handler testified that he didn't know whether the money was even in the bag at the time of the dog sniff:

> Q. Do you know whether or not the money was still in the bags when Diego did the search?
>
> A. No.
>
> Q. You don't know?
>
> A. No.

---

[1] In other cases, the canine handler, after an initial alert, removed the suspected money from a suitcase or a box and had the canine search a second time to confirm that the dog actually alerted to the money, as opposed to an odor emitting from a suitcase or box. *See State v. $11,014.00*, 820 S.W.2d 783, 785 (Tex. 1991); *Antrim v. State*, 868 S.W.2d 809, 813 (Tex. App.—Austin 1993, no writ). This was not done in this case.

(3 RR at 81:22–82:1).

There is no evidence that the dog alerted to the money in Enriquez's bag or that the dog alerted to the bag because the money inside the bags had recently been in close proximity to illegal narcotics. Any claim to the contrary belies the record.

Regardless, the dog alert is not evidence. As an initial matter, a positive alert by drug detection dog, standing alone, does not constitute evidence that money was used in a drug deal. *$43,774.00 U.S. Currency v. State,* 266 S.W.3d 178, 184 (Tex. App.—Texarkana 2008, pet. denied); *$80,631.00 v. State,* 861 S.W.2d 10, 12 (Tex. App.—Houston [14th Dist.] 1993, writ denied).[2] Such evidence is of minimal probative value. *See United States v. $506,231 in U.S. Currency,* 125 F.3d 442, 453 (7th Cir. 1997).

Second, and perhaps most important, the canine handler admitted the dog's alert merely gave rise to a suspicion that the bags were in recent

---

[2] The probative value of a canine alert is minimal because of widespread contamination of currency. *See United States v. $30,600.00,* F.3d 1039, 1042–43 (9th Cir. 1994) (Study showed that 97% of bills taken from various cities throughout the United States tested positive for cocaine; another study showed that 90% of all cash in the United States contained sufficient quantities of cocaine to alert a narcotics detection dog; yet another study found that an average of 96% of the analyzed bills taken from various cities throughout the United States tested positive for cocaine).

contract with narcotics, a suspicion that requires something else to confirm the presence of narcotics:

> Q.  That wasn't my question. It was probably poorly phrased. My question is: When Diego gives an alert, that doesn't prove that narcotics were in the bag. It just gives rise to a suspicion that narcotics were in the bag or around the bag. Correct?
>
> A.  I guess it would be suspicion that narcotics was around or in.
>
> Q.  And do you have to do something further to confirm whether or not narcotics was in the bag or around the bag? Correct?
>
> A.  The case agents do, yes. I just notify the case agents of the alert, that there is odor from narcotics coming from whatever it is and then the case agents take it from there.

(3 RR at 75:14–76:3). Even though such tests were probably available, no tests were run on the money or the bag seized from Enriquez to confirm whether the money or the bag actually contained the odor of narcotics. (2 RR at 151:8–19). The State ignored these admissions in its brief and again ignored them in its motion for rehearing.

At best, the State established that the dog alerted to Enriquez's bag, which gave rise to a suspicion that illegal narcotics were in or around the bag. But suspicion is not evidence. *Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010); *Akin, Gump, Strauss, Hauer & Feld,*

9

*L.L.P. v. National Dev. and Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009). And thus, the dog alert is no evidence that the money seized from Enriquez was in recent proximity to illegal narcotics.

### C. Enriquez is being punished without the State even trying to prove he did anything wrong.

It must be noted that Enriquez is being punished without the State proving he did anything wrong. Enriquez is presumed to be innocent. TEX. PEN. CODE § 2.01 ("All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."). The grand jury didn't find probable cause to indict him and thus, the grand jury no–billed him. (DX 2). Enriquez has never had to answer any criminal charges related to this incident; Enriquez is an innocent owner of the money.

Nor did the State aggressively try to prosecute Enriquez—an alleged money courier—for any alleged crime they now claim justifies the forfeiture of his property. Specifically, the State—represented by the same district attorney's office that prosecuted the forfeiture proceedings—did little to pursue criminal charges against this alleged drug money courier, as the State elected to not call any of the officers involved in the seizure of Enriquez's bag to testify before the grand jury even though they were presumably available. (2 RR at 112:10–14; 3 RR at 22:20–23:4; 71:24–

72:11). It appears that the State was more interested in keeping the money than prosecuting any alleged crime. So Enriquez is being punished. *Austin v. United States,* 509 U.S. 602, 622 (1993) (forfeiture has been viewed and understood as a "payment to a sovereign as punishment for some offense."). But he shouldn't be. The State presented no evidence to establish that the money seized from Enriquez was contraband.

**D.**     **The State's reliance on Enriquez's suspicious actions is unavailing.**

The State's motion for rehearing cites evidence of Enriquez's actions, which the State claims is evidence he was part of a criminal enterprise. The State's "evidence" is nothing more than rank suspicion and speculation that doesn't constitute competent evidence.

In its opening brief, the State used the term "suspicious" or a similar term no fewer than 13 times in its sufficiency analysis, best exemplified by the State's claim that the "record teems with evidence of suspicious activity and circumstances which strongly support the jury's findings." But suspicion is not evidence.

The State relies on that same "suspicious" evidence in its motion for rehearing. For example, the State claims that Enriquez was "unusually well–dressed." Mtn. Recon. at 10, ¶ 19(a). The State makes this claim

despite Alvarez's concession that Enriquez was wearing a tee shirt, like "one of those free tee shirts you probably get at the gym." (2 RR at 145:6–9).

The State also claims the evidence is sufficient because Enriquez was "travelling along a route that is notorious for two–way, drug and drug–money trafficking." Mtn. Recon. at 9, ¶ 16. That is, travelling from Atlanta to Houston is suspicious. Alvarez doubled down on this absurd claim by testifying that people travelling from Los Angeles, New York, Baltimore, Charlotte, Tampa, and probably any foreign country are likewise suspicious for the same reason. (2 RR at 131:1–132:2). But courts have wisely rejected these type of absurd claims. *See United States v. $252,300.00 in U.S. Currency,* 484 F.3d 1271, 1274 (10th Cir. 2007) ("Generalized allegations about … 'known drug destinations' and 'known drug routes' do not provide a nexus to drugs on these facts."); *$130,510 in U.S. Lawful Currency v. State,* 266 S.W.3d 169, 172 n. 5 (Tex. App.—Texarkana 2008, pet. denied) ("we are skeptical that such evidence [travelling on a certain route] offers any probative value to support the State's case.").

The State also attempts to bolster its claim that Enriquez was part of a criminal enterprise by relying on alleged suspicious activity, such as "clutch[ing] his bag tightly," making small talk with another person waiting in the bus station, appearing to be nervous, and shaking his leg. Mtn.

Recon. at 11, ¶¶ 19 (c), (d), and (e)). But Alvarez admitted that this behavior was just as consistent with innocent behavior. Specifically, Alvarez admitted that if he were carrying $31,000 in cash, he too would hold his bag tightly. (2 RR at 120:6–11). Alvarez also conceded there is nothing suspicious about making small talk with another passenger and in fact, he had done so before in airports and bars. (*Id.* at 120:12–25). Alvarez also conceded that making small talk does not make a person a drug courier. (*Id.* at 121:1–2). As for Enriquez's suspicious stretching and shaking of his leg, Alvarez admitted that Enriquez could have been stretching because he was tired from the long bus ride. (*Id.* at 122:2–9). In short, the State's attempt to turn innocent behavior (or even suspicious behavior) into evidence falls flat.

The State also tries to show that Enriquez was suspicious because he was allegedly "watching the officers" and "looking around the bus station for police officers." Mtn. Recon. at 11, ¶ 19(d), (e). These claims are incredible for at least two reasons. First, the officers wore plain clothes—not their police uniforms. (2 RR at 163:13–14 ("We were in plain clothes.")). There is no evidence that Enriquez knew that Alvarez, Hicks, or any of the other officers—wearing plain clothes—were police officers until they approached him. Thus, the State's claim that Enriquez was "watching the

officers to see what they were going to do" lacks any factual basis because it assumes that Enriquez knew that the officers were in fact police officers. Second, the State's claim that Enriquez was allegedly "watching the officers" and "looking around the bus station for police officers" would require knowing Enriquez's state of mind. Without knowing Enriquez's state of mind, any suggestion as to what he was thinking or looking for is nothing more than rank speculation, which is not evidence. Enriquez could have been looking for police officers. He could have also been looking for his ride. In fact, Alvarez admitted that Enriquez may have simply been looking for his ride. (*Id.* at 122:10–20). Thus, Enriquez's looking around the bus station doesn't prove anything.

## Conclusion and Prayer

As the Court can see, the State relies on suspicion, speculation, and surmise to support its claim. But it is axiomatic that suspicion is not evidence. *Regal Fin.*, 355 S.W.3d at 603; *Akin, Gump, Strauss, Hauer & Feld,* 299 S.W.3d at 115. The officers' suspicion, conjecture, surmise, or guesswork is insufficient and thus, no evidence. *Id.*

Conversely, Enriquez directs the Court to actual evidence in the record that negates the State's claims: (1) the officers did not find any drugs, drug paraphernalia, or guns in Enriquez's bag, much less any

marijuana, heroin, cocaine, or methamphetamine, (2) Alvarez's admission that he had ***no evidence*** of the alleged underlying criminal activity (illicit drug transactions) being relied upon by the State for forfeiture, (3) the canine handler's admission that the dog alerted to Enriquez's bag—and not to the money seized from Enriquez, (4) the canine handler's admission that the dog alert merely gave rise to a ***suspicion*** that illegal narcotics were recently in or around the bag, (5) Enriquez was no–billed by the grand jury, and (6) that the State—despite claiming that the "cumulative force" of the evidence supports a finding that the money was the proceeds of criminal activity—did next to nothing to pursue criminal charges against Enriquez, as the State elected to not call any of the officers involved in the seizure of Enriquez's bag to testify before the grand jury. Aside from the absence of drugs and drug paraphernalia, the State continues to ignore and refuses to address this evidence—mostly admissions by its own officers. But how could the State effectively address this evidence? It is hard to compose an argument that there is legally sufficient evidence of criminal activity when your lead officer admits he has no evidence of any such criminal activity. The Court should deny the State's motion for rehearing.

Respectfully submitted,

LEYH, PAYNE & MALLIA, PLLC

By: */s/ Sean M. Reagan*
      Sean Michael Reagan
      sreagan@lpmfirm.com
      Texas Bar No. 24046689
      9545 Katy Freeway, Suite 200
      Houston, Texas 77024
      Telephone: 713-785-0881
      Facsimile: 713-784-0884

**ATTORNEY FOR APPELLANT**

**Certificate of Service**

I certify that a true and correct copy of this document has been served on all interested parties of record on this the 18th day of December 2015.

*/s/ Sean M. Reagan*
Sean M. Reagan

**Certificate of Compliance**

Under Rule 9.4 of the TEXAS RULES OF APPELLATE PROCEDURE, I certify that the foregoing document is a computer–generated document containing 3,296 words. The undersigned relied upon the word count feature on his word processor in determining the word count.

*/s/ Sean M. Reagan*
Sean M. Reagan