FILED
United States Court of Appeals
Tenth Circuit

October 17, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

$144,780.00 IN UNITED STATES
CURRENCY, more or less,

    Defendant.

------------------------------

NATHAN L. DUCKWORTH,

    Claimant - Appellant.

No. 18-3201
(D.C. No. 6:15-CV-01230-JWB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.
_____

This is a civil forfeiture case brought under the Controlled Substances Act, 21

U.S.C. § 881(a)(6), seeking forfeiture of $144,780 in United States currency. After a

bench trial, the district court concluded the Government established by a

preponderance of the evidence that Claimant–Appellant Nathan Duckworth intended

to exchange the $144,780 seized from him during a traffic stop for controlled

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

substances. Accordingly, the district court entered a judgment forfeiting the currency to the United States. Claimant appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On May 12, 2015, Trooper James McCord of the Kansas Highway Patrol stopped a rented 2015 Chevrolet Tahoe traveling westbound on Interstate 70 in Ellis County, Kansas, after he observed the vehicle exceeding the speed limit. Claimant was driving the vehicle, and his companion, Walter Weathers, Jr., was in the front passenger seat. When Trooper McCord approached the Tahoe, he smelled the odor of burnt marijuana emanating from the vehicle. Trooper McCord asked Claimant and Weathers about their travel plans, and Claimant responded they were traveling to Denver for a week-long family vacation. Trooper McCord found this suspicious because the rental agreement indicated the Tahoe was due back in Kansas City at noon that same day and because there was no luggage in the vehicle—only two shirts and a pair of pants were hanging in the backseat. Both Claimant and Weathers denied smoking marijuana in the Tahoe, and they told Trooper McCord there were not any drugs in the vehicle.

Based on the smell of marijuana, Trooper McCord searched the Tahoe. The search revealed a backpack between the driver and passenger seat containing $144,780 rubber-banded together in two clear, vacuum-sealed plastic bags. When Trooper McCord asked Claimant why he was carrying such a large sum of currency, Claimant said it was none of his business. During the search, Trooper McCord also found

2

marijuana "gleanings"—small particles of marijuana—and tobacco gleanings in the Tahoe. The marijuana gleanings were photographed but never collected or tested. Trooper McCord did not find any burnt marijuana, cigars, rolling papers, or other drug paraphernalia in the Tahoe. A criminal background check revealed Claimant had two prior arrests for drug trafficking. Trooper McCord then moved the Tahoe to Kansas Patrol Troop D Headquarters. While at Troop D Headquarters, Kansas Highway Patrol Trooper William Gray conducted a canine sniff of the currency. Jaxx, a certified patrol dog, alerted to the presence of a narcotic odor on the currency.

The Government filed a complaint asserting the $144,780 seized from Claimant was subject to forfeiture under 21 U.S.C. § 881(a)(6) because the currency was intended to be furnished in exchange for controlled substances or was proceeds of an illegal drug transaction. Claimant filed a notice of claim and an answer to the complaint in which he asserted ownership of the currency, alleging the currency was legitimately derived and not connected to illegal drug activity. Claimant also moved to suppress the currency and other evidence discovered during the traffic stop, arguing the search violated the Fourth Amendment. Following a suppression hearing, the district court concluded Trooper McCord lawfully stopped Claimant's vehicle and probable cause existed to search the vehicle based on Trooper McCord's credible testimony that he smelled marijuana. Accordingly, the district court denied Claimant's motion to suppress.

At the bench trial, the Government introduced the testimony of Trooper Ryan Wolting of the Kansas Highway Patrol over Claimant's objection. Trooper Wolting

3

testified that on October 12, 2014, Claimant was a passenger in a rental vehicle heading eastbound on I-70 in Ellsworth County, Kansas. Claimant and his wife, who was driving the vehicle, told Trooper Wolting they were unemployed and traveling back to Kansas City from Hays, Kansas, where they spent a one-night get away from home. Trooper Wolting searched the vehicle and discovered "approximately nine pounds of vacuum-sealed marijuana in one-pound individual packages, a loaded pistol in the center console, and approximately $5,320 in [Claimant's] pants pocket[,]" all of which Claimant claimed as his property. In the instant proceeding, Claimant admitted the 2014 stop occurred, but he denied ownership of the marijuana and testified he was neither charged nor convicted of marijuana possession or illegal possession of a firearm.

Claimant objected to Trooper Wolting's testimony on relevance grounds. While the district court allowed Trooper Wolting to testify over Claimant's objection, it also recognized Federal Rule of Evidence 404(b) places limitations on prior criminal acts. The court indicated it would examine the issue further and possibly disregard the evidence in making its ultimate rulings. In its order granting forfeiture, the district court stated it did not consider Trooper Wolting's testimony in reaching its decision.

The district court found Claimant's testimony regarding the purpose of his trip to Denver not credible. Claimant testified he was traveling to Denver to drop off $144,780 with Ruben Romero, a social media acquaintance he had never met in person, as an investment in a twelve-city music tour. Based on the evidence presented at trial, the district court found the "tour idea was little more than a concept (or perhaps more

4

accurately, a pretext), with no artists, venues, dates, locations (aside from Kansas City) or other details agreed to between Romero and Claimant." As to where the $144,780 came from, Claimant testified its sources included: (1) income from his event promotion business and (2) a $40,000 loan from Mustafa Ali, a business associate. While the district court questioned Claimant's alleged sources of the $144,780 due to discrepancies in his tax returns, it found his explanation "at least plausible."

Ultimately, the district court concluded the Government failed to show by a preponderance of evidence the $144,780 constituted proceeds traceable to an illegal drug exchange. The court held, however, Claimant more likely than not intended to exchange the currency for controlled substances. Accordingly, the district court entered a judgment forfeiting the $144,780 to the United States.

## II.

Claimant raises three issues on appeal. First, he argues the district court erred in denying his motion to suppress evidence discovered during the traffic stop resulting in the seizure of the $144,780. Second, Claimant contends the district court abused its discretion in allowing Trooper Wolting to testify concerning the 2014 traffic stop. Third, Claimant argues the Government presented insufficient evidence to support the district court's order of forfeiture. We address each issue in turn.[1]

---

[1] Claimant also argues the district court erred in denying his motion for summary judgment and his motion for judgment as a matter of law. The denial of summary judgment, as is the case here, ordinarily is not appealable. *Castillo v. Day*, 790 F.3d 1013, 1017 (10th Cir. 2015). Nonetheless, Claimant's basis for both these arguments is that the Government failed to present sufficient evidence to support forfeiture of the

First, Claimant contends the district court erred in denying his motion to suppress the $144,780 and other evidence discovered during the traffic stop. Claimant does not question the validity of the initial stop on appeal, so we need not review its legality here. Nor does Claimant dispute the well-established law that "the odor of marijuana by itself is sufficient to establish probable cause." *See United States v. Johnson*, 630 F.3d 970, 974 (10th Cir. 2010). Rather, he argues the district court erred in relying on evidence seized during the search—namely, the $144,780—to support its finding of probable cause.

Before we turn to the merits of Claimant's argument, we must address the appropriate standard of review. As Claimant acknowledges, he did not make this argument before the district court and has thus forfeited the argument. Accordingly, we review for plain error. *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). To establish plain error, Claimant must show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Although this is a civil case, "the government will be barred from introducing evidence illegally seized in violation of the [F]ourth [A]mendment to prove a claim of forfeiture." *United States v. $149,442.43*, 965 F.2d 868, 872 (10th Cir. 1992). "In reviewing a district court's denial of a motion to suppress, we view the evidence in the

$144,780. As noted above, whether the Government presented sufficient evidence in this case is the third and final issue we address.

light most favorable to the Government and accept the district court's factual findings unless clearly erroneous." *United States v. Gilmore*, 776 F.3d 765, 768 (10th Cir. 2015). "We review de novo the ultimate determination of the reasonableness of a search . . . under the Fourth Amendment." *Id.* But we can, of course, "affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court." *United States v. Fager*, 811 F.3d 381, 385 (10th Cir. 2016) (quoting *United States v. Mabry*, 728 F.3d 1163, 1166 (10th Cir. 2013)).

"[W]hen . . . officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband." *Florida v. White*, 526 U.S. 559, 563–64 (1999). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001)). Our cases provide the smell of marijuana alone establishes probable cause to search a vehicle. *United States v. Snyder*, 793 F.3d 1241, 1244 (10th Cir. 2015) (collecting cases).

The record clearly establishes Trooper McCord had probable cause to search the Tahoe based on the odor of marijuana he smelled coming from the vehicle. At the suppression hearing, Trooper McCord testified he is trained to detect marijuana and is familiar with the smell of marijuana. Trooper McCord also testified he detected an odor of marijuana coming from the Tahoe and told Claimant someone had smoked marijuana in the vehicle. The district court found this testimony credible and

7

concluded Trooper McCord had probable cause to conduct the search. Finding no clear error in the district court's factual findings, the smell of marijuana emanating from the Tahoe supplied Trooper McCord with probable cause to search the vehicle.

We further conclude the district court did not erroneously rely on evidence seized during the search as a basis for finding probable cause existed. In its probable cause ruling, the district court focused exclusively on Trooper McCord's testimony concerning the smell of marijuana coming from the Tahoe. As the court explained:

> I cannot conclude from what I've heard today that the trooper's testimony that he believed that he smelled the smoking of marijuana was deliberately untruthful, and because I can't conclude that I must conclude that he had probable cause to conduct the search.
>
> *Based on that probable cause finding*, I'm going to deny the Motion to Suppress.

Appellant's App. at 269–70 (emphasis added). Nowhere in its ruling does the district court mention the $144,780 or any other evidence discovered during the search. We are not persuaded by Claimant's attempt to paint the record as otherwise. The district court, therefore, did not err in its probable cause determination and in denying Claimant's motion to suppress. Because Claimant fails to show the district court erred in denying his motion to suppress, he cannot establish plain error.

B.

We next turn to Claimant's argument that the district court abused its discretion in permitting Trooper Wolting to testify regarding the prior traffic stop and drug-related arrest of Claimant on October 12, 2014. Specifically, Claimant contends the

8

evidence is inadmissible under Federal Rule of Evidence 404(b) because it constituted improper character evidence used to demonstrate action in conformity therewith.

We need not address whether Trooper's Wolting testimony constituted inadmissible character evidence under Rule 404(b) because even if the district court erred in allowing such testimony, the error was harmless. "An erroneous admission of evidence is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *United States v. Yeley-Davis*, 632 F.3d 673, 685 (10th Cir. 2011) (quoting *United States v. Bornfield*, 145 F.3d 1123, 1131 (10th Cir. 1998)). The district court is presumed to have disregarded improperly admitted evidence during a bench trial. *Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 896 (10th Cir. 2000).

Claimant fails to show Trooper Wolting's testimony influenced the outcome in this case. Although the district court permitted Trooper Wolting to testify regarding the 2014 stop, the court explicitly stated in its order granting forfeiture it did not consider this evidence in reaching its decision. We have no reason to doubt the district court's exhortation. As we explain below, ample evidence existed—without considering evidence of the 2014 stop—for the district court to conclude the $144,780 was subject to forfeiture. Thus, Trooper Wolting's testimony did not substantially prejudice Claimant, and any error was harmless.

C.

Finally, we address Claimant's argument that the Government presented insufficient evidence to support forfeiture under 21 U.S.C. § 881(a)(6). "In an appeal

from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. $252,300.00 in United States Currency*, 484 F.3d 1271, 1273 (10th Cir. 2007) (quoting *Holdeman v. Devine*, 474 F.3d 770, 775 (10th Cir. 2007)). Sufficiency of the evidence is a legal question we review de novo. *Douglas v. Workman*, 560 F.3d 1156, 1172 (10th Cir. 2009).

Section 881(a)(6) provides for the forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). The burden of proof lies with the Government to show, by a preponderance of the evidence, the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). In evaluating whether the Government has met its burden of proof, we employ a common-sense approach and look to the totality of the circumstances. *$252,300.00*, 484 F.3d at 1274.

As a preliminary matter, we are not convinced the Government must establish "a substantial connection between the property and the offense" where, as here, it employs a proceeds or intended-for-exchange theory. *See* 18 U.S.C. § 983(c)(3). Section 983(c)(3) provides: "[I]f the Government's theory of forfeiture is that the property was *used to commit or facilitate* the commission of a criminal offense, or was *involved in the commission* of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3) (emphasis added). The plain text of the statute indicates the substantial connection requirement only applies when the Government is basing forfeiture on a

10

facilitation theory. Moreover, in *$252,300.00*, we stated: "The government's theory of forfeiture is that the currency 'was furnished or intended to be furnished in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, *or was used or intended to be used to facilitate*' criminal acts." 484 F.3d at 1273 (emphasis added). Because, however, we find the evidence in this case sufficient to conclude a substantial connection exists between the $144,780 and illegal drug trafficking, and because the parties did not fully brief the issue, we decline to address whether such a showing is required here.

Considered in their totality, the facts of this case demonstrate the Government presented sufficient evidence to support the district court's order of forfeiture.[2] This evidence is as follows. Claimant rented a Tahoe on May 8, 2015, which was due back on May 12, 2015—the day of the stop. When Trooper McCord pulled the Tahoe over, Claimant stated he was traveling to Denver for a week-long family vacation, but the Tahoe contained no luggage; only two shirts and a pair of pants were hanging in the rear of the vehicle. At trial, Claimant admitted he lied to Trooper McCord about the purpose of his trip to Denver. Trooper McCord smelled the odor of burnt marijuana coming from the Tahoe, conducted a search of the Tahoe, and found $144,780 bundled with rubber bands inside two vacuum-sealed plastic bags. During the search, Trooper McCord also discovered marijuana gleanings in the third-row seating area of the

---

[2] In finding the Government presented sufficient evidence to support forfeiture, we do not consider the fact Jaxx, a certified narcotics detection dog, alerted to the presence of controlled substances on the $144,780.

11

Tahoe. After Trooper McCord discovered the currency, Claimant explained neither the source of the currency nor why he was traveling with such a large amount of cash.

Claimant later explained he planned to drop off the $144,780 with Romero, a Denver resident Claimant knew through Facebook but had never met in person, as an investment in a twelve-city music tour. No written agreement between Claimant and Romero or any documentation outlining the details of the tour existed at the time of the stop. Nor did Claimant produce any evidence to show he was investing the $144,780 in a music tour Romero was already putting together.

Claimant challenges the district court's finding that his explanation for his trip to Denver was implausible. Specifically, Claimant contends he produced evidence showing he had a successful event promotion business and had arranged a meeting with Romero to invest in a music tour; thus, the district court should have found his story credible. The district court found Claimant's explanation for transporting the currency—to leave $144,780 with a social media acquaintance as an investment in a music tour—either unsubstantiated or wholly lacking in credibility. We are required to give district court determinations of fact and assessments of witness credibility special deference. *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74 (1985). The district court gave several reasons supported by the record for finding Claimant's story implausible, and we need not restate them here. Our review of the record simply provides no basis upon which to conclude the district court's assessments of credibility or other findings of fact were clearly erroneous.

12

The discovery of large quantities of cash alone, of course, is not sufficient to establish Claimant intended to furnish the $144,780 in exchange for a controlled substance or to prove the currency constituted proceeds of illegal drug transactions. We have, nonetheless, recognized such discovery is "strong evidence" of a connection to illegal drug trafficking. *$252,3000.00*, 484 F.3d at 1274–75. Additionally, legitimate businesses do not transport large quantities of cash wrapped in cellophane-type material—this is a technique drug traffickers use in an effort to prevent detection by drug-sniffing dogs. *Id.* Such evidence has "significant probative value." *Id.* The presence of a substantial amount of vacuum-sealed currency combined with the district court's finding—which is not clearly erroneous—that Claimant failed to credibly explain the purpose for his trip to Denver weigh strongly in favor of concluding the currency is subject to forfeiture.

Inconsistent statements as to the purpose of traveling with seized currency are also of probative value. *See $252,3000.00*, 484 F.3d at 1274. Claimant informed Trooper McCord he was going to Colorado for a family vacation, and he conceded at trial this was a lie. As to the purported music tour, Claimant's testimony contradicted Romero's testimony. Claimant testified he planned to merely invest the $144,780 in a music tour Romero had already been putting together. Romero, on the other hand, testified he only planned to handle the artists, the twelve-city tour was Claimant's idea, and Claimant would have lined up the venue in each city. The inconsistencies in Claimant's story weigh in favor of finding Claimant intended to exchange the $144,780 for a controlled substance and the $144,780 was connected to illegal drug activity.

13

Claimant's criminal history involving drugs is not coincidental; rather, it suggests the subject currency was connected to illegal drug activity. *See United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 286 (6th Cir. 1992) (explaining a "claimant's record of drug activity is a highly probative factor in the forfeiture calculus"); *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1236 (9th Cir. 1988) (noting a claimant's prior arrests and convictions on drug charges "are circumstances demonstrating more than mere suspicion of his connection with an illegal drug transaction"). Claimant's prior drug-related arrests and convictions provide a nexus to illegal drug activity.[3] Where this evidence is accompanied by other persuasive evidence such as the odor of marijuana coming from his vehicle, the presence of drugs in his vehicle, and lying to a law enforcement officer, we conclude it supports the reasonable inference Claimant intended to exchange the $144,780 for controlled substances and the currency is connected to drug trafficking.

As to the sources of the currency, Claimant contends he established the legitimacy of the $144,780 by presenting evidence of substantial income through his event promotion business and a loan from a business associate. Evidentiary support, or lack thereof, establishing a legitimate source of the currency is "entitled to considerable weight" in the forfeiture calculus. *See $252,3000.00*, 484 F.3d at 1275. To support his claim, Claimant proffered evidence of a $40,000 loan he received from Mustafa Ali in exchange for a promissory note under which Claimant agreed to repay

---

[3] Like the district court, we did not consider evidence of Claimant's October 2014 traffic stop and arrest in reaching our decision.

the loan in two months at 50% interest. Claimant also testified about his successful event promotion business and proffered invoices showing his company profited more than $150,000 in the first half of 2015 before the seizure of the $144,780. Eric Union, the manager of Encore Nightclub, testified these contracts were legitimate and the invoices were accurate based on a headcount of how many people entered the club during each event.

But Union also testified neither he nor his employees handled the cash because Claimant controlled the cash during these events. Notably, Encore Nightclub closed on May 17, 2015, supposedly after it lost its liquor license. John Masha, Claimant's business associate, also testified that his full-time event booking company's annual gross income is approximately $50,000. Although Claimant had a personal checking account, savings account, and business bank account for his company, none of the seized $144,780 came from a bank. Claimant declared bankruptcy in 2011, and he never reported making more than $19,000 per year prior to the traffic stop giving rise to this case. Claimant initially reported about $17,000 as income on his 2014 tax return but subsequently amended this tax return to show about $95,000 in income after the seizure of the $144,780. The district court found Claimant generally lacked credibility due to, *inter alia*, his evasive and non-responsive answers at trial concerning his taxes.

Based on this evidence, the district court concluded the Government failed to establish by a preponderance of the evidence the $144,780 constituted proceeds of an illegal drug exchange. We are less convinced Claimant's proffer of possible innocent sources of income vitiates the Government's showing of a strong probability the

15

$144,780 was in fact proceeds of illegal drug transactions. But it is not this appellate court's place to weigh conflicting testimony or evaluate the credibility of the witnesses. *See Anderson*, 470 U.S. at 573–74. Although we may have weighed the evidence differently had we sat as the trier of fact, we cannot conclude the district court's account of the evidence is implausible in light of the record.

Nonetheless, the Government plainly carried its burden in this case to prove the $144,780 is subject to forfeiture under 18 U.S.C. § 881(a)(6). Given the implausibility of Claimant's explanation for his trip, Claimant's false statement to Trooper McCord about the purpose of his trip, the large amount of cash involved, the method in which the currency was bundled and vacuum sealed, Claimant's borrowing $40,000 from a business associate with a promise to repay the loan with 50% interest in two months, the marijuana gleanings found in his rental vehicle, his drug-related criminal history, and the discrepancies between his alleged income and his tax returns, the Government presented sufficient evidence showing Claimant intended to exchange the $144,780 for a controlled substance and the $144,780 is substantially connected to illegal drug trafficking. Thus, the district court properly forfeited the currency to the Government.

\* \* \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

16